IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **KIMBERLY TEMPLETON,** | § | |
| **Plaintiff,** | § | |
| | § | |
| | § | |
| | § | **CIVIL ACTION 3:06-CV-0337-L** |
| **V.** | § | **(ECF)** |
| | § | |
| | § | |
| **CARDIOVASCULAR PROVIDER** | § | |
| **RESOURCES, INC.  d/b/a THE** | § | |
| **HEARTPLACE.** | § | |
| **Defendant.** | § | |

**PLAINTIFF KIMBERLY TEMPLETON'S AMENDED COMPLAINT**

**I.  INTRODUCTION**

1.  This is a proceeding for reinstatement, injunctive relief and damages to redress the deprivation by Defendant Cardiovascular Provider Resources, Inc. d/b/a The Heartplace ("Defendant") of plaintiff Kimberly Templeton's ("Templeton") rights as an employee under the laws and statutes of the United States of America and State of Texas.

**II. JURISDICTION & VENUE**

2.  The court's jurisdiction is invoked under 28 U.S.C. § 1331.

3.  This case was originally filed July 6, 2005, in Tarrant County, Texas District Court, and was removed February 23, 2006, to the United States District Court for the Northern District of Texas, Dallas Division.

**III. PARTIES**

4.  Templeton is a resident of Cleburne, Johnson County, Texas.

5.  Defendant is a Nevada corporation doing business in the state of Texas.

# IV.  STATEMENT OF FACTS

6. Templeton began working for defendant in its Richardson, Texas location as an unpaid intern echo cardiographer in about May 2002.

7.  Defendant hired Templeton as an echo cardiographer in its Arlington, Texas location beginning October 8, 2002.

8. In October/November 2003, Templeton's obstetrician advised Templeton that she needed surgery for a health condition.

9. Templeton notified her supervisor Diane Salazar of the health condition; that she needed time off to seek treatment for the health condition and requested time off to seek treatment.

10. At the time of this request, Templeton had worked for the defendant for twelve months and for at least 1250 hours during the previous twelve months.

11. At the time of this request, the defendant employed more 50 employees within a 75 mile radius of the Arlington, Texas location where Templeton worked.

12. The surgical treatment for Templeton's health condition required an in-patient stay in a hospital and more than three consecutive days of incapacity.

13. Templeton was a qualified employee within the meaning of the Family Medical Leave Act (FMLA)

14. The defendant was an "employer" within the meaning of the FMLA.

15. Salazar was hostile to Templeton's request for time off for treatment for the health condition and interfered with her attempt to seek medical treatment by denying Templeton's requests for leave for treatment and by canceling appointments Templeton had already made for treatment.

16. During the same October/November 2003 time period, Templeton had what she thought was a heart attack with symptoms that included rapid heartbeat, numbness, dizziness and shortness of breath.

17. Templeton visited the emergency room (ER) where she was diagnosed with super ventricular tachycardia, known as SVT, and told by the ER doctor to seek treatment from a cardiologist.

18. Templeton worked for cardiologists at the defendant's Arlington, Texas location, and sought treatment for her heart condition from one of the cardiologists that she worked for Dr. Kramer.

19. Dr. Kramer gave Templeton medication available only by prescription to treat her SVT.

20. Despite treatment, Templeton had more SVT attacks and after an attack during the time she was at work was sent to the hospital in a wheel chair.

21. Dr. Kramer ordered extensive testing be performed on Templeton during her admission to the hospital.

22. After reviewing the results of these tests, Dr. Kramer referred Templeton to a specialist in her condition, an electro physiologist.

23. Dr. Kramer recommended two health care providers to Templeton:  Dr. Peter Wells, who practiced with defendant in a Dallas location or Dr. McBride, an outside physician whose office was in Fort Worth.

24. Templeton chose to seek treatment from Dr. McBride because he was an outside doctor and made an appointment.

25. Salazar cancelled Templeton's appointment with Dr. McBride and instructed Templeton to make an appointment to see Dr. Wells.

26. Templeton complained to Dr. Kramer that Salazar was interfering with her right to seek medical treatment for her condition from Dr. McBride.

27. Dr. Kramer directed Salazar to make an appointment for Templeton to see Dr. McBride.

28. Salazar made the appointment, but later cancelled it over Templeton's objection and made an appointment for Templeton to see Dr. Wells.

29. Templeton's heart condition was a serious health condition within the meaning of the FMLA.

30. Templeton saw a physician for her heart condition on more than two occasions and had more than three consecutive days of incapacity due to the condition.

31. Templeton was absent for a number of days in December 2003, but returned to work in January 2004.

32. Templeton noted that defendant had given performance evaluations to the employees at the Arlington, Texas location in January 2004, but that no one had discussed her performance evaluation with her.

33. Templeton asked Cliff Penton, one of defendant's human resources personnel why she had not had a review and when she might expect to receive it.

34. Penton said that Templeton had not been at work when the other employees' performance evaluations had been conducted, a fact that Templeton knew to be false.

35. Templeton continued to request her performance evaluation and on another occasion Penton told her that he had misplaced her paperwork.  On yet another occasion, Penton told Templeton that it had slipped his mind.

36. In addition, Templeton noticed a change in demeanor toward her by Penton who had been friendly and talkative to her when he was in the Arlington office, but who had avoided looking at her, started avoiding her and stopped talking with her about things such as how her animals were doing, etc.

37. Templeton continued to seek treatment for her heart from Dr. Wells who told her at her appointment on or about Monday, February 9, 2004, that she would need a pacemaker to regulate her heartbeat.

38. Dr. Wells informed Templeton that when she had the surgery for the pacemaker she would need a minimum of a thirty (30) day leave of absence.

39. On or about Tuesday, February 10 or Wednesday, February 11, Templeton told Salazar that Dr. Wells had predicted she would need a pacemaker to regulate her heart and that she would require at least a 30 day leave.

40. On Thursday, February 12, 2004, Templeton who was known to arrive at work at least half an hour early, was met by Christine Billingsley, defendant's human resources manager.

41. Billingsley told Templeton she was fired and that she should leave before the other employees arrived.

42. Templeton asked rhetorically if she were being fired because of her heart condition and then stated that she thought that that would be illegal

43. Billingsley responded that they had discussed Templeton's medical condition and had determined that it was not life-threatening.

44. Defendant later claimed it had fired Templeton because she had allegedly using profanity several weeks before.

45. Templeton did not use profanity and the reason provided by defendant is pretext.

46. Templeton worked in excess of forty hours a w

47. Templeton was not paid compensation for the extra time and is entitled to be paid at time and half for the work.

## V. <u>CLAIMS FOR RELIEF</u>

### FIRST CLAIM FOR RELIEF

Interference with rights in violation of the FMLA

48.  Templeton restates, realleges and incorporates the allegations set forth above in paragraphs 1 through 47.

49. Defendant interfered with Templeton's attempt to take leave to seek treatment for a serious health condition by denying her requests for time off for doctor's appointment and canceling appointments that Templeton had made to seek medical treatment for the condition.

50.  Defendant interfered with Templeton's ability to schedule the surgical treatment recommended by her obstetrician and knew that that surgery was necessary and would be required in the future.

51. Defendant also knew that Templeton would need a pacemaker and that she would need at least a thirty day leave of absence to recover from the procedure.

52. Defendant terminated Templeton's employment so that it would not be required to accommodate Templeton's need for leave to seek medical treatment for her serious health conditions.  .

53. Defendant's actions interfered with Templeton's rights under the FMLA are a violation of the Act for which Templeton seeks a remedy..

### SECOND CLAIM FOR RELIEF

Retaliatory discharge in violation of the FMLA

54. Templeton restates, realleges and incorporates the allegations set forth above in paragraphs 1 through 53 above.

55. Defendant terminated Templeton in retaliation for her exercise of rights under the FMLA.

56. The FMLA prohibits retaliation against an employee who seeks the benefits of the Act.

57. Defendant's actions in retaliating against Templeton are a violation of the Act for which Templeton seeks a remedy.

## THIRD CLAIM FOR RELIEF

### Violation of the Americans with Disabilities Act

58. Templeton restates, realleges and incorporates the allegations set forth above in paragraphs 1 through 57 above.

59. Templeton has and has record of and is regarded as having a physical or mental impairment that substantially limits one or more major life activities.

60. Templeton was qualified for the position of echo cardiographer since she satisfied the skill, experience, education and other job related requirements for the position.

61. Templeton can perform the essential functions of the position of an echo cardiographer with reasonable accommodation.

62. Templeton's disability, actual, history or and perceived, was a motivating factor in defendant's decision to terminate her employment.

63. Defendant violated the Americans with Disabilities Act (ADA) by discharging and/or discriminating against Templeton based on her actual history of, and perceived disability.

64. Templeton filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) and was issued a Notice of Right to Sue.

65. All conditions precedent to filing this cause of action under the ADA have been fulfilled.

66. Templeton has been damaged by, and seeks recovery of these damages, for this violation of her rights.

## FOURTH CLAIM FOR RELIEF

### Violation of Texas Commission on Human Rights Act

67. Templeton restates, realleges and incorporates the allegations set forth above in paragraphs 1 through 66 above.

68. Templeton has and has record of and is regarded as having a physical or mental impairment that substantially limits one or more major life activities.

69. Templeton was qualified for the position of echo cardiographer since she satisfied the skill, experience, education and other job related requirements for the position.

70. Templeton can perform the essential functions of the position of an echo cardiographer with reasonable accommodation.

71. Templeton's disability, actual, history or and perceived, was a motivating factor in defendant's decision to terminate her employment.

72. Defendant violated §21.051 of the Texas Labor Code by discharging and/or discriminating against Templeton based on her actual history of, and perceived disability.

73. Templeton filed a charge of discrimination with the Texas Commission on Human Rights and was issued a right to sue notice.

74. All conditions precedent to filing this cause of action have been fulfilled

75. Templeton has been damaged by, and seeks recovery for, this violation of her rights.

## FIFTH CLAIM FOR RELIEF

Violation of Employee Retirement Income Security Act of 1974

76. Templeton restates, realleges and incorporates the allegations set forth above in paragraphs 1 through 75.

77. Defendant discriminated against and eventually discharged Templeton in violation of §510 of the Employee Retirement Income Security Act (ERISA).

78. Templeton was a participant in an employee benefit plan maintained by defendant.

79. Defendant terminated Templeton for the purpose of interfering with the attainment or exercise of rights which Templeton was entitled to under the plan and with the specific intent to discriminate against Templeton.

80. Templeton has been damaged by, and seeks recovery of, the damages she sustained as a result of this violation of her rights.

## SIXTH CLAIM FOR RELIEF

### Violation of the Fair Labor Standards Act

81. Templeton restates, realleges and incorporates the allegations set forth above in paragraphs 1 through 80.

82. Templeton would further show that she worked in excess of forty hours a week during her employment with CPR, that she was entitled to by paid overtime for work in excess of forty hours, and that she was not paid this overtime as required by the Fair Labor Standards Act (FLSA).

## SEVENTH CLAIM FOR RELIEF

### Negligence in Maintaining the Confidentiality of Medical Records

83. Templeton restates, realleges and incorporates the allegations set forth above in paragraphs 1 through 82.

84. The Health Insurance Portability and Accountability Act (HIPAA) create a duty of care with respect to the privacy of health information.

85. Defendant breached this duty when it released to Salazar, Billingsley and others not yet identified and when the same discussed Templeton's confidential health condition among people who did not have a right to know.

86. As a result of this failure to maintain the confidentiality of Templeton's medical information, the information was used against Templeton as part of an adverse employment decision.

87. Templeton was damaged by, and seeks recovery of damages sustained as a result of this violation of her rights.

## VI. EXEMPLARY DAMAGES

88. Templeton restates, realleges and incorporates the allegations set forth above in paragraphs 1 through 87

89. Defendant acted with actual malice *e.g.* ill-will, spite, evil motive, or purpose to injure another.

90. Templeton's harm was a result of these willful and intentional acts on the part of defendant.

91. Templeton seeks exemplary damages.

## VII. JURY DEMAND

92. Templeton demands a trial by jury of the claims triable by jury raised in this
    complaint.

## VII. <u>PRAYER FOR RELIEF</u>

Wherefore Templeton prays for the following relief:

1.  Back pay, including, but not limited to, lost earnings and employee benefits in the past for each claim for relief alleged above.

2.  Front pay, including, but not limited to, lost earnings and employee benefits that in reasonable probability will be lost in the future for each claim for relief alleged above .

3.  Compensatory damages, past and future which may include emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses.

4.  Exemplary damages in an amount that will deter such conduct in the future.

5.  Reinstatement, if feasible.

6.  Reasonable and necessary attorney's fees.

7.  Costs and pre and post-judgment interest.

8.  Such other and further relief, both legal and equitable, to which Templeton may be justly entitled.


Respectfully submitted,


*s/     N. Sue Allen*
N.  Sue Allen
Texas State Bar No. 00791992
307 West Seventh Street, Suite 1800
Fort Worth, Texas 76102
817-926-5005
817-926-5165 (facsimile)
sue@sueallenlaw.com

## <u>CERTIFICATE OF SERVICE</u>

I certify that a copy of the foregoing was served August 31, 2006, to defendant's

counsel of record via the Court's ECF Filing System to:

> Carrie B. Hoffman
> Michele C. Spillman
> **GARDERE WYNNE SEWELL LLP**
> 1601 Elm Street
> 3000 Thanksgiving Tower
> Dallas, Texas  75201


> *s/ N. Sue Allen*
> N.  Sue Allen